VORNADO, INCORPORATED, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF WOODBRIDGE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1976—Decided October 27, 1976.

Before Judges LYNCH, MILMED and ANTELL.

*Mr. Barry H. Shapiro* argued the cause for appellant (*Mr. Arthur W. Burgess,* attorney; *Mr. Shapiro* on the brief).

*Mr. Kenneth D. McPherson* argued the cause for respondent (*Messrs. Waters, McPherson & Hudzin,* attorneys; *Mr. Richard J. Sinton* on the brief).

The opinion of the court was delivered by

MILMED, J. A. D. The Township of Woodbridge appeals from judgments of the Division of Tax Appeals reducing local property assessments for the years 1973 and 1974 on certain real property owned by Vornado, Incorporated.

The judge of the Division who heard the matter found "the true value of the property to be as assessed." He then proceeded: (a) to find "as a fact that a common level did not exist in the Township of Woodbridge in 1973 and 1974," and (b) to determine that the average ratio promulgated by the Director of the Division of Taxation "for the two years 86.73%" would apply.

The finding that no common level of assessment existed in the township for the years in question could not reasonably have been reached on sufficient credible evidence in the record. We are "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." *State v. Johnson*, 42 *N. J.* 146, 162 (1964). It is clear from the entire record, and we so find, that Woodbridge assessed at a common level in 1973-1974, and that plaintiff taxpayer was assessed at that level. A revaluation of the assessed properties in the township, made by an independent appraisal firm, was put into effect for the tax year 1970 as of October 1, 1969. Assessments at 50% of true value, the county ratio at the time, were maintained for the tax years 1970 through 1972.[1] For 1973 the county board of taxation ordered assessments to be at 100% of true value. In order to comply, the local tax assessor testified:

We incremented all appraised values from the year 1969 by 25 percent and applied that factor to the 100 percent value of all real estate in the municipality.

_____

[1] In regard to the subject property, however, a $75,000 reduction in the assessments for these tax years (1970–1972) was allowed by stipulation in the Division of Tax Appeals.

He stated that he based the increment of 25% over the 1969 value primarily on an inflationary factor, *viz.,*

* * * that real estate had gone up in value, as evidenced by a drop in the ratio of the original 50 percent to 40 percent. In effect, our State ratio was then at 40 percent, and in order to convert 40 percent to 100, the factor would be 2.50 on the assessed valuation, which is what we applied uniformly and without exception to every assessment, both land and building, in the entire municipality.

For the tax year 1974 the 1973 level was, in effect, maintained. In regard to plaintiff's property, the only major change from the 1973 to the 1974 assessments was the addition of the cost of a new building.[2] Plaintiff concedes that it "is being assessed at 100% of true value."

The local assessor emphasized in his testimony that the township was attempting to maintain a common level of assessment,[3] and the evidence reveals reasonably consistent adherence to that goal.[4] Compare, *In re Appeals of Kents 2124 Atlantic Ave., Inc.,* 34 *N. J.* 21, 27 (1961), where the court pointed out that "The assessors themselves, in their

---

[2]The original assessments on the subject property for the two tax years were:

|  | 1973 | 1974 |
|---|---|---|
| Land | $1,071,500 | $1,071,600 |
| Buildings | $1,908,250 | $2,109,100 |
| Total | $2,979,750 | $3,180,700 |

The Middlesex County Board of Taxation determined that the property was "not entitled to a reduction" in either of the two years, and dismissed plaintiff's appeals from the assessments.

[3]"By definition, a taxpayer has no discrimination grievance if the standard of valuation generally applied in the taxing district, if one is discernible, is not more favorable than that which has been applied in the assessment of his property. The short-hand term generally employed since *Kents* for the just stated standard of valuation is a 'common level.'" *Tri-Terminal Corp. v. Edgewater,* 68 *N. J.* 405, 409–410 (1975), *cert.* den. 425 *U. S.* 958, 96 *S. Ct.* 1739, 48 *L. Ed.* 2d 203 (1976).

[4]The general coefficient of deviation was 11.54 for 1973 and 12.24 for 1974. " 'A coefficient of deviation of less than 20% is usually

testimony upon the remand, disavowed consciousness of a specific ratio and portrayed the total picture as the hit-and-miss product of years of inattention."

Here, as in *Tri-Terminal Corp. v. Edgewater*, 68 *N. J.* 405 (1975), and *Piscataway Assoc., Inc. v. Piscataway*, 139 *N. J. Super.* 276 (App. Div. 1976),

* * * the taxpayer has failed to show that, relative to the generality of other assessed real property in the municipality, its property is being assessed on a less favorable basis. It has not shown that its property has not sustained the same enhancement in value as other properties in the municipality. See 68 *N. J.* at 411–412. [*Piscataway Assoc., supra* at 283]

Plaintiff taxpayer has not met the *Kents'* criterion, *viz.,* "A taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally." 34 *N. J.* at 33. And see, *Tri-Terminal, supra,* 68 *N. J.* at 412. Beyond this, as the record here shows, Woodbridge assessed at a common level in 1973-1974, and the subject property was assessed at that level. In the circumstances, the Division judge erred in applying the Director's ratios to give discrimination relief.[5]

considered good,' *i. e.,* not requiring revaluation." *Tri-Terminal Corp. v. Edgewater, supra,* 68 *N. J.* at 413, n. 4. As stated in the February 1975 report of the Division of Taxation on *Coefficients of Deviation a Measure of Property Assessment Uniformity,* "* * * a low coefficient signifies reasonable equality of assessment in the taxing district."

[5] We emphasize, nonetheless, as did the court in *Tri-Terminal,* that the assessor's practices here

* * * are not necessarily approved as sound in relation to the proper assessment of individual properties. The law calls for the separate assessment of each parcel annually at its true value on the assessing date. * * * While practicalities obviously preclude most assessors reviewing every assessment line item every year, * * * there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. * * * [68 *N. J.* at 413–414]

The judgments under review are reversed and the original assessments on the subject property for the tax years 1973 and 1974 are reinstated. The matter is remanded to the Division of Tax Appeals for the entry of appropriate judgments consistent herewith.